## WALKER vs. JARVIS, and others.

A died testate as to his personal estate only, leaving heirs to whom his real estate descended, and having made a contract to convey certain real estate, of which he held the legal title, as security for a loan of money, to B, which C afterwards claimed by purchase and conveyance from B and the heirs of A, and C sold and conveyed it, by quit claim deed, to D, and took back a mortgage for the purchase money. In an action to foreclose the mortgage, which was defended on the ground that A's interest in the land was personal estate, and passed to his administrator, and that C, at the sale to D, fraudulently represented that

the title was good. *Held,* that the administrator of A's estate was not a necessary party to the action, even if A's interest in the land was only personalty, and as such had passed to his administrator.

*Held* further, that the existence of a paramount title in such administrator was no defense to the foreclosure suit, unless fraud were shown in the sale to D.

A judgment in foreclosure is not defective for directing the officer who is to make the sale, to execute and deliver to the purchaser "a certificate as required by law," without further specifying what the certificate shall contain. *Jones v. Gilman,* 15 Wis., 450, distinguished.

Where only part of the mortgage debt is due, and the property cannot be sold in parcels, the judgment should direct the payment to the plaintiff of the amount actually due, and that the surplus, if any, be paid into court, and the plaintiff cannot be compelled to receive any part of the sum secured by the mortgage, which is not due.

APPEAL from the Circuit Court for *Dane* County.

This action was commenced in January, 1861, to foreclose a mortgage executed about the 1st of February, 1860, by *George Jarvis* and *Sarah,* his wife, to one Findlay, to secure three notes for the purchase money of the mortgaged premises, the first payable December 10, 1860, and the others one and two years respectively from that date. The mortgage was recorded June 22d, 1860, and assigned, before the commencement of the suit, to the plaintiff, for whom Findlay had acted as agent in the purchase and sale of the land. The defense was, that before and at the time of the purchase, Findlay falsely and fraudulently represented that one Fisher, from certain of whose heirs he had acquired the land, held the same free from all equities, except such as grew out of a contract by him to convey the same to one Sheasby, and that Fisher did not acquire the title to the land from Sheasby or from any other person as security for any indebtedness; whereas, the answer alleges, Fisher in fact, held the legal title to the land merely as security for a loan of money to Sheasby, and upon Fisher's death his interest went to the administrator, and finally to certain legatees of said Fisher, persons other than those through whom Findlay claimed title. After issue joined, the defendants *George* and *Sarah Jarvis,* moved for an order making Farwell, administrator of the estate of said Fisher, deceased, a defend-

ant to the action, on the ground that it appeared by the answer that a complete determination of the controversy could not be had without the presence of said administrator, and that he had an interest in the subject matter of the controversy, which should be protected.   Motion denied.

On the trial, the defendants *George* and *Sarah Jarvis* introduced evidence in support of the several allegations of their answer.   It appears from the evidence, that James Sheasby purchased the land of one Barlow, about the year .1851, and borrowed the money of Fisher to pay for it, and that to secure the repayment of the money so borrowed, the deed was, by agreement of the parties, made directly from Barlow to Fisher, who gave Sheasby a bond for the execution of a deed to him on such repayment being made in two years.   This bond was assigned by James Sheasby to his son Edward, and by him to Wm. B. Jarvis, Sen., after whose decease, his executors, Wm. B. Jarvis, Jr., and *George Jarvis*, were made defendants to an action by Findlay, for a strict foreclosure of the contract,— Findlay claiming title to the land under a purchase from certain heirs of Fisher, known as the " American heirs," to whom his real property has descended.   It appears also that Fisher's personal property had been bequeathed to certain other persons called his " English heirs."   Findlay and *George Jarvis* were advised by attorneys whom they consulted together, that the former could not give a good title to the land, as against the " English heirs," unless he should obtain a strict foreclosure of the land contract; and by agreement between them, the executors of Wm. B. Jarvis, Sen., permitted him to obtain the land by a judgment in said foreclosure suit then pending, and thereupon Findlay conveyed the land to *George Jarvis*, and to secure the payment of the amount agreed upon as purchase money, took the mortgage sought to be foreclosed in this action.   It is not deemed necessary to state the evidence in regard to Findlay's knowledge, at the time of this sale to *George Jarvis*, of the real nature of the transaction be-

tween Fisher and James Sheasby, since the court decides no question in regard to it except as to its general effect.

The circuit court found the facts as alleged in the complaint, and that the matters of defense alleged in the answer were not established; and rendered judgment on the 23d day of December, 1861, that the defendant *George Jarvis* was indebted to the plaintiff in the sum of $345.50, upon the two notes first named in the complaint, which were then due, and in the further sum of $175.70 upon the third note, which was not yet due; and it appearing from the report of a referee that the mortgaged premises could not be sold in parcels without injury &c., the judgment directed, among other things, that the *whole* of said premises should be sold, unless previous to the sale, the defendant should pay the amount found actually due, &c.; that the sheriff should " execute and deliver to the purchaser at said sale a certificate, as required by law;" that he should pay to the plaintiff, out of the proceeds of the sale, the costs of the action, " and also the amount so found by the court as secured by said mortgage and unpaid," with legal interest from the date of the finding; and that he bring the surplus moneys into court &c.; and that the defendant &c., "be forever barred and foreclosed of all right, title, interest and equity of redemption" in the premises, " and that the purchaser at said sale be let into possession thereof on production of the sheriff's deed." The mortgagors appealed.

*Wm. F. Vilas*, for appellants:

1. The judgment nowhere provides that the defendants may redeem within one year from the sale, as required by chap. 195, laws of 1859. *Jones vs. Gilman*, 15 Wis., 450. It also provides that the whole of the mortgaged premises shall be sold together, to pay the amount *due and unpaid* on the mortgage. This last is the proper provision in case the land is to be sold *in parcels*. If the whole is sold, the proceeds should be applied to the payment of the whole debt by paying the face of the note not yet due, without interest. R. S., ch. 145, secs.

5-9. 2. The court erred in denying the motion to make Farwell a party. The case comes clearly within the rule that equity will bring in all parties necessary to a complete adjustment of the controversy. *Lowther vs. Carlton*, 2 Atk., 139; *Williams vs. Williams*, 9 Mod., 299. There is no question here of legal titles, but the whole matter is one of equity cognizance. The interest of Farwell is that of an equitable mortgagee, which he must resort to a court of equity to enforce. It was well settled that when a defense of failure of title, was set up to a suit for the foreclosure of a mortgage given for the purchase money, on showing that an ejectment suit was brought against the mortgagor, the court of chancery would stay proceedings in the foreclosure till the ejectment suit was determined. *Johnson vs. Gere*, 2 Johns., Ch. R., 546. But here the question of the validity of the adverse title is one for a court of equity. And especially since the code has abolished all distinctions between law and equity, no valid reason can be given why the whole controversy should not be determined in one suit. Story's Eq. Pl, § 72, § 236 *a*. 3. Counsel contended that it was clear upon the evidence that Findlay knowingly misrepresented his title, by stating that Fisher had owned the land absolutely, and not as security for a loan of money; or that he at least concealed from the vendee a defect in his title known to him, and which the vendee had no means of knowing. He also contended that false representations by the vendor to the vendee, as to the title of land, though innocently made, if they touch a material part of the transaction, and the vendee relies, and acts upon them, are sufficient to call for a rescission of the contract. *Taylor vs. Fleet*, 1 Barb. (S. C.), 471; Willard's Eq. 150. 4. *Jarvis* should be released from his contract, upon the ground that it was entered into under a mistake as to the facts in regard to Findlay's title. *Hyne vs. Campbell*, 6 Mon., 286; *Taylor vs. Fleet, supra.*

*H. W. & D. K. Tenney*, for respondent.

*By the Court,* COLE, J.    We are satisfied that there were no fraudulent representations by Findlay, in respect to the title to the lands embraced in the mortgage.    This whole idea is fully exploded by the testimony.    It does certainly appear that all the parties were mistaken in regard to the interest of Fisher in the land.    They all supposed he held the absolute title, subject to the contract of sale given to Sheasby.    This was their idea of the matter, and they acted accordingly.    But it appears that Fisher did not in fact own the property absolutely, it having been conveyed to him by Barlow, to hold as security for the payment of the money which he had loaned to Sheasby. His interest in the property was therefore, only that of a mortgagee; and when the money was paid, the mortgagor, Sheasby, was entitled to his conveyance.    This was the true relation of the parties, and the condition of the title.    But of this main fact all parties seemed to be ignorant; for they supposed Fisher owned the property in fee, and had sold it to Sheasby by giving him an ordinary land contract.    In this they were all laboring under a mistake.    But the testimony does not sustain the assertion that Findlay knew all about the title and the nature of Fisher's interest, and made affirmations or false representations in respect to that interest, upon which Jarvis relied in making the purchase.    On the contrary, he does not seem to have known any more upon that subject than Jarvis himself.    Indeed the whole negotiation of the parties, before the sale; their frequent conversations together and with the attorneys, Wakeley and Tenney, as to what steps it was necessary to take to perfect the title; the suit for the forclosure of the contract; all these things show incontestibly that one party knew as much as the other about the title, and that no statements or false representations were relied on.    If *Jarvis* was ignorant of the real nature of Fisher's interest, there is nothing to show that Findlay was better informed.    It is said that Edward Sheasby swears that he told Findlay, the latter part of 1860 or fore part of 1861, that his father had borrowed the money of

Fisher to pay Barlow, and that Fisher only held the title as security for the payment of this money.   But this was a long time after this mortgage was executed.   *Jarvis* undoubtedly supposed he was getting a good title ; but this belief was not founded upon any false representations made in respect to it. He knew that the interest of Sheasby in the property belonged to his father's estate, of which he was executor ; that there was a question whether Fisher's interest had become vested in the English or in the American heirs ; for all these matters had been fully talked over.   He certainly had ample notice to put him upon inquiry as to Fisher's interest, and might have discovered the defect in the title coming from that source, had he been vigilant, or he might have protected himself by covenants of warranty in his deed.   He had a full opportunity of examining into the sufficiency of Findlay's title ; he knew its source and origin ; the doubt which existed as to its being perfect ; and now after having exercised his own or such other judgment as he confided in, on the goodness of it, if it turns out defective, he has no remedy, unless fraud was practiced upon him to induce him to make the purchase ; and the evidence fails to show that this was done.

But it is insisted that the court erred in refusing to make Farwell a party.   We think otherwise.   The interest which Farwell had in the property, if any, was as administrator of the estate of Fisher, and was clearly paramount to the mortgage foreclosed.   It appeared to be that of a prior existing mortgage.   At all events we cannot see that he was a necessary party to this suit.   Whether indeed he can set up his lien as against the appellant, the deed from Barlow to Fisher not having been recorded as a mortgage, it is not necessary to decide. If he has any interest in the property, it is a paramount one, and cannot be settled in this suit.

We likewise think the objection unfounded, that the judgment of foreclosure does not conform to chapter 195 Laws of 1859.   That act requires the officer making the sale, to execute

to the purchaser a certificate setting forth certain matters therein required to be stated. This judgment directs the sheriff to execute and deliver to the purchaser at the sale, a certificate as required by law. This we deem sufficient. It is not like the case of *Jones vs. Gilman*, 15 Wis., 450, where by the judgment and sale the equity of redemption was barred.

The other objection taken to the judgment is clearly untenable. The mortgagee could not be compelled to take his debt before it fell due. The whole mortgaged premises were required to be sold, and the proceeds applied to the payment of the debt due and unpaid, and the surplus brought into court to await its further orders. This was all that could be done under the circumstances.

The judgment of the Circuit Court must be affirmed.